902 F.2d 28
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Carl Odell ECHARD, Petitioner-Appellant,
v.
Jerry C. HEDRICK; Charles Brown, Attorney General for the
State of West Virginia, Respondents-Appellees.
 No. 88-7197.
 United States Court of Appeals, Fourth Circuit.
 Argued July 24, 1989.
Decided April 17, 1990.
As Amended April 24, 1990.
As Amended May 7, 1990.
 
 Appeal from the United States District Court for the Northern District of West Virginia, at Elkins. William M. Kidd, District Judge. (CA-88-38-E(K))
 Richard Allen Bush, Bush & Trippel, Parkersburg, W.Va., argued, for appellant; Richard Allen Bush, Bush & Trippel, Parkersburg, W.Va., on brief.
 Clarion Terry Owen, Senior Assistant Attorney General, Charleston, W.Va., for appellees.
 Charles G. Brown, Attorney General, Charleston, W.Va., for appellees.
 N.D.W.Va., 351 S.E.2d 51.
 AFFIRMED.
 Before DONALD RUSSELL, WIDENER and K.K. HALL, Circuit Judges.
 WIDENER, Circuit Judge:
 
 
 1
 Carl Odell Echard is currently serving two sentences: one for a Ritchie County, West Virginia, conviction for second degree murder and one for a Wood County, West Virginia, conviction for unarmed robbery. He brings a habeas corpus action pursuant to 28 U.S.C. Sec. 2254 to challenge the sentence imposed by the circuit court of Wood County, which incidentally may question the validity of the Ritchie County sentence. Echard claims his sentence is invalid on two grounds. First, he claims that the sentence imposed in Wood County was improper in that it was not imposed to run concurrently with that of Ritchie County because the consecutive sentence levied by the Wood County circuit court violated a plea agreement he entered into in Ritchie County. He also claims that he was not given proper good time credit on his sentences. We find these claims without merit and affirm.
 
 
 2
 On May 10, 1978, Echard was convicted of armed robbery in Wood County.[1] Taking note of two prior convictions, the Wood County circuit court sentenced Echard to life imprisonment as a recidivist on June 28, 1978.[2] In order to allow the defendant time to appeal the conviction and sentence, however, execution of the sentence was stayed until October 31, 1978.
 
 
 3
 On July 5, 1978, Echard was charged with first degree murder in Ritchie County. Pursuant to a plea bargain agreement, on March 24, 1980, he pleaded guilty to the lesser included offense of second degree murder. He was sentenced to a term of not less than five years or more than eighteen years. The court followed the prosecuting attorney's recommendation and ordered that the sentence run concurrently with the life sentence previously imposed in Wood County.
 
 
 4
 On July 29, 1981, the West Virginia Supreme Court of Appeals reversed the first conviction and life sentence (Wood County) and remanded the case for new trial.[3] Instead of going through with the new trial, however, Echard entered a plea bargain agreement with the State and pleaded guilty to unarmed robbery. On his plea, he was sentenced to not less than five nor more than twenty-three years in the penitentiary. This agreement, however, was silent as to whether the sentence would run concurrently with or consecutive to the Ritchie County conviction. The Wood County circuit court imposed the sentence to run consecutive to the Ritchie County sentence.
 
 
 5
 Echard appealed once more to the West Virginia Supreme Court of Appeals.[4] His appeal centered on whether he was properly awarded good time credit for his original sentence in Wood County. The Court decided that the records clerk improperly applied West Virginia's good time statute and arrived at an incorrect discharge date. It reworked the calculations and arrived at a discharge date of February 4, 1991. Otherwise, the sentences of the circuit courts were left undisturbed.
 
 
 6
 Echard claims that the circuit court of Wood County erred when it imposed his sentence to run consecutive to the sentence in Ritchie County.[5] The argument goes that such a sentence was in violation of his plea bargain in Ritchie County and, therefore, of constitutional significance. He claims that he entered into the plea bargain agreement on the strength of the prosecution's promise that the sentences would run concurrently.
 
 
 7
 This promise, however, was fulfilled when the Ritchie County circuit court ordered the sentences to run concurrently. So the argument fails. The life sentence with which the Ritchie County sentence was to run concurrently was vacated by Echard's own doing. Echard was sentenced in Wood County on the unarmed robbery charge after the Ritchie County sentence had been imposed and the Ritchie County Agreement had been given effect. Echard presents no authority, and we know of none, which would, absent explicit agreement, bind the State to the Ritchie County plea bargain agreement for a Wood County conviction not yet had, much less sentenced for.
 
 
 8
 The Constitution itself does not guarantee good time credit for satisfactory behavior while in prison. However, once a State creates a right to good time, the prisoner's interest is sheltered by due process. Wolff v. McDonnell, 418 U.S. 539, 557 (1974).
 
 
 9
 In West Virginia, good time is regulated by statute and is the time deducted from the sum of the maximum terms of two indeterminate consecutive sentences to determine a minimum discharge date. Echard v. Holland, 351 S.E.2d at 57.
 
 
 10
 During the periods of time involved here, Echard was entitled to overtime good time of 4 years, 8 months and 20 days and warden's good time of 9 months and 20 days.[6] He also was entitled to pre-sentence credit of 1487 days for time served on his Wood County conviction prior to its reversal. Those just mentioned good time credits on the sentences are by virtue of West Virginia Code Sec. 28-5-27a and 28-5-27b prior to its 1984 amendment. In addition, under West Virginia Code Sec. 28-5-27(c) of the statute following the 1984 amendment, day for day good time is credited.
 
 
 11
 The West Virginia Court in Echard v. Holland, in computing the minimum discharge date, decided that the sentencing date of March 24, 1980, was the effective date for purposes of computing Echard's minimum discharge date. 351 S.E.2d at 57.
 
 
 12
 To that date, under West Virginia Code Sec. 28-5-27(e), for the Wood County and Ritchie County consecutive sentences, the court added 41 years by adding the sentences together as the statute provides. From the 41 years, the court subtracted 20 years and 6 months under West Virginia Code Sec. 28-5-27(c); the pre-sentence credit of 1487 days for time served on the Wood County sentence prior to its reversal; overtime good time of 4 years, 8 months and 20 days; and warden's good time of 9 months and 20 days. The Court fixed the resulting date of February 4, 1991, as Echard's minimum discharge date.
 
 
 13
 Echard does not take exception to those figures in any manner which will affect our decision. He does, however, claim that "... he is entitled to apply 'overtime good time' credit and 'Warden's good time' credit, earned while both sentences were being served concurrently to both sentences." Echard brief, p. 13. That is his real claim in this proceeding. He claims that the sentences were served concurrently between March 24, 1980, and March 30, 1982; it seems more likely, however, that the sentences were served concurrently between March 24, 1980, and July 29, 1981, the date the Wood County conviction was vacated, for which had been imposed the life sentence. Our decision will not be altered, however, by any difference in the dates we have just mentioned, because we think Echard is not entitled to double credit as he claims.
 
 
 14
 The State points out, with reason, that since good time is subtracted from the end of a sentence, that good time is meaningless in the setting of life imprisonment, so that any good time which might have been earned while Echard was serving his life sentence was not really credited to that sentence. This is corroborated by a reference to the warden's good time statute, Sec. 28-5-27a prior to the 1984 amendment which explicitly excepts from its application "life prisoners" and Sec. 28-5-27(d) of the current statute which explicitly excepts prisoners serving "a life sentence" from receiving "any good time pursuant to this section." Even if all the good time credits we have mentioned are awarded to Echard to ascertain his earliest release date, there is no reason that we can see, absent an explicit agreement, that the Constitution might require a credit on a sentence which had not been imposed. The Wood County indeterminate sentence of 5 to 23 years was not imposed until March 30, 1982. Until that time, or at least until July 29, 1981, any time Echard had served on the Wood County conviction was served on the life sentence, which had no good time credits. When the life sentence became an indeterminate sentence of from 5 to 23 years, it also became a consecutive sentence, and as to that, the West Virginia Supreme Court of Appeals has given Echard full credit for everything he claims. The underlying real contention in this case, therefore, without which it cannot succeed, is that the Wood County circuit court had no right to impose a consecutive indeterminate sentence after vacation of the life sentence, which point we have previously disposed of.
 
 
 15
 Finally, Echard may be said to claim that he has ended up in a worse position because he appealed his first conviction in the circuit court of Wood County. See North Carolina v. Pierce, 395 U.S. 711 (1969). As the State points out, however, his parole eligibility date was not changed to his detriment by his consecutive sentence, and he has been given credit for all of the good time to which he is entitled as well as all time served. We are of opinion his position was not worsened by that appeal. As things stood, had he not appealed, he would have had no minimum discharge date except by way of reference to the parole statute and regulations because he was serving a life sentence.[7] Subsequent to his second sentence by the circuit court of Wood County, he had a minimum discharge date, and his parole date was earlier. So he has suffered no prejudice because of his appeal and resentencing, indeed his position was better after appeal than before.
 
 
 16
 The judgment of the district court is, accordingly,
 
 
 17
 AFFIRMED.
 
 
 18
 K.K. HALL, Circuit Judge, concurring in part and dissenting in part:
 
 
 19
 I concur in all of the majority opinion except for its disposition of Echard's overtime good time and warden's good time (collectively "good time") claims. Because I find that Echard has been deprived of statutorily entitled good time credit in violation of the Fourteenth Amendment, I must respectfully dissent as to this portion of the majority opinion.
 
 I.
 
 20
 The somewhat complicated computations regarding Echard's release date obfuscate what is really a simple claim. As the majority acknowledges, from at least March 24, 1980, the date the Ritchie County second degree murder sentence was imposed, until July 29, 1981, the date the original Wood County armed robbery conviction was vacated, Echard was discharging both sentences concurrently. It is axiomatic that when two sentences are served concurrently, each is discharged simultaneously. And, necessarily, good time credit accrues to each simultaneously. When the West Virginia Supreme Court of Appeals recalculated Echard's release date, he received good time credit for this 15-month period only once, apparently because on resentencing the unarmed robbery sentence was made consecutive to the second degree murder sentence. Echard, 351 S.E.2d at 51. This recalculation violated Echard's right to be free from double punishment for the same offense.
 
 
 21
 In North Carolina v. Pearce, 395 U.S. 711 (1969), the Supreme Court addressed the question whether the Double Jeopardy clause of the Fifth Amendment as applied to the states through the Fourteenth Amendment "requires that, in computing the sentence imposed after conviction upon retrial, credit must be given for time served under the original sentence." Id. at 716-17. In answering yes, the Court held "that the constitutional guarantee against multiple punishments for the same offense absolutely requires that punishment already exacted must be fully 'credited' in imposing sentence upon a new conviction for the same offense." Id. at 718-19 (emphasis added). The footnote to this passage is the key to this case:
 
 
 22
 Such credit must, of course, include the time credited during service of the first prison sentence for good behavior, etc.
 
 
 23
 Id. at 719 n. 13.
 
 
 24
 The West Virginia court's computation of Echard's sentence thus contravenes Pearce by failing to award Echard, on the new unarmed robbery sentence, the good time he previously earned while serving the old armed robbery sentence. Furthermore, this computation directly contravenes one of the core purposes of the Double Jeopardy Clause, "to ensure that sentencing courts do not exceed, by the device of multiple punishments, the limits prescribed by the legislative branch of government, in which lies the substantive power to define crimes and prescribe punishments." Jones v. Thomas, --- U.S. ----, 109 S.Ct. 2522, 2525 (1989); see also Ohio v. Johnson, 467 U.S. 493, 498-99 (1984). Here, on resentencing, Echard received the statutory sentence for the offense of unarmed robbery, second felony offense. See W.Va.Code Secs. 61-2-12, 61-11-18. The failure to fully credit him with time already served then necessarily will result in his incarceration beyond the period established by the West Virginia legislature.
 
 
 25
 The majority's conclusion that the Double Jeopardy clause has not been offended is based entirely on an improper application of West Virginia's previous good time statute, W.Va.Code Sec. 28-5-27. The majority places great weight on its conclusion that the statute did not entitle life prisoners to good time credit. With this conclusion, I wholeheartedly agree. The next step in the majority's syllogism--that because from March 24, 1980, until July 29, 1981, Echard was serving a life sentence for armed robbery he could not have accrued good time credit during that period--does not necessary follow. For double jeopardy purposes, Echard's punishment cannot exceed the statutory maximum for the offense of which he now stands convicted, unarmed robbery. And for that offense, he is not now, and never has been, a life prisoner.* Pearce requires that in calculating his present sentence, all punishment already exacted, including good time, must be fully credited. Id. at 718-19. By depriving Echard of the good time he earned during those 16 months, the West Virginia court and the majority have failed to follow the clear mandate of Pearce.
 
 
 26
 Likewise, the majority's recognition that under W.Va.Code Sec. 28-5-27(e) two consecutive sentences are treated, for good time purposes, as a single combined sentence, does not remove this case from the ambit of Pearce. Certainly, from July 29, 1981, the time Echard's first Wood County conviction was vacated, to the present, he has accrued good time only for the single combined consecutive sentence. However, from March 24, 1980, until July 29, 1981, he was serving both sentences concurrently, and good time accrued to each independently and simultaneously. Consequently, Pearce requires that the "double" good time that Echard earned on both sentences during this 16-month period be credited to his current consecutive term.
 
 
 27
 In sum, while I agree in principle with the majority's interpretation of West Virginia's good time statute, I cannot agree with the way the majority applies it in the instant case.
 
 II.
 
 28
 Because it is unclear from the record presented in this Court exactly how much good time Echard earned from March 24, 1980, to July 29, 1981, I would vacate the lower court's judgment and remand for recomputation of Echard's release date consistent with the above reasoning. The majority's failure to do so compels me to dissent.
 
 
 
 [1]
 The statement of facts in this opinion is taken largely from the opinion in Echard v. Holland, 351 S.E.2d 51 (W.Va.1986), which facts the parties agree are correct
 
 
 [2]
 The conviction became effective the day of his armed robbery conviction, May 10, 1978
 
 
 [3]
 State v. Echard, 280 S.E.2d 724 (W.Va.1981)
 
 
 [4]
 Echard v. Holland, 351 S.E.2d 51 (W.Va.1986)
 
 
 [5]
 W.Va.Code Sec. 61-11-21 requires that sentences are to be consecutive unless the court orders them to run concurrently. In this case, the court ordered consecutive sentences
 
 
 [6]
 These figures are transposed on pages 54 and 57 of 551 S.E.2d. We have used the figures used by appellant so there will not be any controversy surrounding any difference
 
 
 [7]
 West Virginia Board of Probation and Parole Procedural Rules, Secs. 4.01(a)(4) and (6), provided that Echard's earliest parole date was after the service of 15 years under his life sentence from Wood County and concurrent Ritchie County sentence. After his resentencing in Wood County to an indeterminate term of not less than 5 nor more than 23 years, to be served consecutive to the Ritchie County sentence of not less than 5 nor more than 18 years, Sec. 4.01(a)(7) provided that his earliest parole date was after the service of 10 years
 
 
 *
 As mentioned above, under W.Va.Code Secs. 61-2-12, 61-11-18, Echard could not have received life imprisonment for this offense. Thus, to treat any portion of his incarceration as being served under a life sentence for double jeopardy purposes is simply incorrect